UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SAGE PRODUCTS, LLC, <br><br> Plaintiff, <br><br> v. <br><br> CHEMRITE COPAC, INC., <br><br> Defendant. | No. 19 CV 5308 <br><br> District Judge Bucklo <br><br> Magistrate Judge McShain |

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is a motion by defendant Chemrite Copac, Inc. to compel plaintiff Sage Products, LLC to produce text messages [56].[1] The motion is fully briefed. [63, 74]. For the following reasons, the motion is granted.

**Background**

This is a breach-of-contract suit between Sage, a manufacturer and supplier of healthcare products, and ChemRite, a chemical manufacturer that provided certain cleaning, rinsing, and moisturizing solutions for inclusion in Sage's products. [1] 1. ChemRite contracted with Sage to manufacture and provide Sage with mouthwash and mouth moisturizing solutions that were subject to regulation by the Food and Drug Administration (FDA). [*Id.*]. In June and July 2017, the FDA issued warning letters to both parties. The letter to ChemRite advised that the company had failed to maintain separate production areas and equipment for the manufacture of the products that it supplied to Sage and for other products made by ChemRite that were not subject to FDA regulation, resulting in possible adulteration of the Sage products. [1-1] 20-22. The letter to Sage advised that Sage had failed to adequately oversee ChemRite's production of the oral-rinse solutions and raised other concerns with a

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings. Many of the exhibits submitted by the parties in support of their positions have been filed under seal. The Court has found it necessary to refer to some of those sealed filings in this decision, but the Court has attempted to do so without revealing any information that could be reasonably deemed confidential. To the extent the Court has discussed confidential information, however, the Court has done so because it is necessary to explain the path of its reasoning. *See In re Specht*, 622 F.3d 697, 701 (7th Cir. 2010); *Union Oil Co. of Cal. v. Leavell*, 220 F.3d 562, 568 (7th Cir. 2000).

microbial testing method that Sage had used in connection with its oral-rinse solutions and other products. [*Id*.] 25-29. On August 14, 2017, Sage voluntarily initiated a global recall of all oral-hygiene products that contained the ChemRite-manufactured solutions. [1] 8.

Shortly before initiating the recall, Sage sent ChemRite a written demand for records, including a list of ingredients in the products manufactured on the affected production line. [55-2] 2-3. One year later, in September 2018, Sage issued a formal "Notice of Claim" to ChemRite, stating that Sage "will be making a claim against ChemRite . . . for past and ongoing damages with respect to the worldwide product recall announced by Sage[.]" [55-3]. Sage then filed this lawsuit in August 2019. [1]. It seeks more than $62 million in damages. [53-2] 3.

During fact discovery, ChemRite requested documents and communications relating to actions taken by Sage or its parent company, Stryker, in response to the FDA warning letters. [52] 4-5; [53-6]. The document requests defined "communicate" and "document" in very broad terms that encompassed text messages. [53-6] 3-4. Sage made ten document productions on a rolling basis during nearly two years of fact discovery. [66] 1, ¶ 5. Sage did not object to the scope of ChemRite's requests, nor did Sage state that it had not searched for, or was withholding, communications that had occurred over text message. *See* [53-8] (Sage's responses to ChemRite's first set of document requests).

ChemRite deposed several Sage and Stryker witnesses during discovery, including Brett Simmering, Stryker's Vice President of Quality, Regulatory, and Clinical for the Medical Division, and Sean Haley, Sage's former Vice President of Commercial Operations. [55-4]; [55-9]. Simmering testified that he communicated by text message with at least four other Stryker executives about the global recall. [55-4] 5-6. Shown a print-out of a text message he had exchanged with two Stryker executives, Simmering said he was "struggling to recall this conversation from nearly four years ago," but that the message appeared to concern another executive's opinion that only a complete recall of the affected products would satisfy the FDA. [*Id.*] 7-8. Emails produced during discovery show that Simmering had referred other Stryker executives to consider certain text messages he had sent about the warning letters and the recall. *See* [55-5] 2 (Simmering's July 27, 2017 email sharing text messages with Michelle Jordan, Stryker's Director of Regulatory Affairs); [55-6] 2 (Simmering's August 8, 2017 email to three Stryker executives indicating that he had, "per my text," "highlighted some areas in yellow to confirm dates and status"); [55-7] 2 (Simmering's August 14, 2017 email to Chief Regulatory Specialist Renata Sila making suggestion, "per my text," to include certain information about "the number of devices/drugs in addition to the number of cases"). For his part, Haley testified that he texted with his "staff and key associates periodically," though the deposition excerpt filed with the Court does not make clear the subject of these text messages. [55-9] 2, 4.

2

In mid-June 2021, with the fact discovery period set to close on July 30, 2021 [48], the parties engaged in the Local Rule 37.2 meet-and-confer process regarding ChemRite's request that Sage supplement its document production with responsive text messages. The parties' meet-and-confer correspondence establishes that Sage's document productions did not include text messages from Sage or Stryker employees. *E.g.*, [53-17] 3; [53-18] 2-4. Sage explained that it "does not maintain a repository of its employees' text messages sent from their mobile phones and therefore has no internal ability to search the contents of such devices." [66] 3, ¶ 15. Sage offered to search for and produce responsive text messages from July and August 2017 that had been retained by its current employees, but ChemRite rejected this offer. [*Id.*], ¶ 17.

## Legal Standard

"In ruling on a motion to compel, the discovery standard set forth in Rule 26(b) applies." *Mendez v. City of Chicago*, 18-cv-6313, 2020 WL 4736399, at *3 (N.D. Ill. Aug. 14, 2020). Rule 26 "governs the scope of civil discovery and allows parties to obtain discovery regarding any matter that is: (1) nonprivileged; (2) relevant to any party's claim or defense; and (3) proportional to the needs of the case." *Barnes-Staples v. Murphy*, Case No. 20-cv-3627, 2021 WL 1426875, at *2 (N.D. Ill. Apr. 15, 2021). "In determining the scope of discovery under Rule 26, relevance is construed broadly and is 'not limited to issues raised by the pleadings[.]'" *Id.* (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)). At the same time, discovery must be proportional to the needs of the case, "considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

## Discussion

ChemRite argues that Sage should be compelled to produce "all recoverable text messages relevant to this dispute." [52] 10. In support, ChemRite observes that it properly requested this material early in the discovery process, but Sage "never once objected or indicated it was withholding any documents, leading ChemRite to believe it had received all responsive information." [*Id.*]. ChemRite maintains that the text messages are likely to be relevant to its defenses to Sage's claims, particularly its contention that the recall was driven primarily by "Sage's independent and repeated microbial testing method problems," rather than the alleged adulteration concerns with the products ChemRite supplied to Sage. [74] 7. ChemRite contends that the texts represent "contemporaneous communications about Sage's own regulatory concerns, its strategy in responding to the warning letters, Sage's evaluation of ChemRite's records, and Sage's ultimate decision to throw ChemRite under the bus." [52] 3.

3

Sage opposes the motion on two grounds. First, Sage argues that the motion is untimely because it was filed "in the final weeks of nearly two years of discovery[.]" [63] 7. Sage points out that it served its ten document productions on ChemRite between December 18, 2019 and April 13, 2021, yet ChemRite did not raise the text-message issue until the June 2021 meet-and-confer. [*Id.*]. Sage also insists that ChemRite "cannot feign surprise . . . that Sage did not search and produce text messages" because (1) during the parties' ESI search-term negotiations, Sage provided ChemRite with "hit reports that included emails and attachments–not text messages"; and (2) emails produced by Sage demonstrate that some Sage employees exchanged text messages about the warning letters, but the texts themselves were not included in Sage's document productions. [*Id.*] 8. Second, Sage argues that the burdens of ChemRite's request are disproportionate to the benefits of the requested discovery. [*Id.*]. Sage contends that ChemRite "has offered no evidence that any text messages exist that would add any substantive information [about the case that is] not already reflected in the extensive record[.]" [*Id.*]. Sage also claims that any further text messages would not help ChemRite establish its defenses. [*Id.*] 9-11. Finally, Sage asserts that ChemRite's request "would impose an unwieldy burden" on Sage. [*Id.*] 11. On this point, Sage represents that "it does not maintain a repository of its employees' text messages[,]" such that Sage could comply with the request only by "locat[ing] or confiscate[ing] each personal or employer-issued cell phone used four years ago by any Sage custodian and send them to an outside vendor for remote imaging before running search terms against the content." [*Id.*].

### A. Timeliness

"The Federal Rules of Civil Procedure place no prescribed time limit on the outside date for filing a motion to compel discovery." *In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 331, 332 (N.D. Ill. 2005). "The broad discretion afforded courts over discovery matters includes the discretion to determine whether a movant's tardiness constitutes undue delay." *West v. Miller*, No. 05 C 4977, 2006 WL 2349988, at *5 (N.D. Ill. Aug. 11, 2006). "[D]istrict courts may deny motions as untimely due to unexplained or undue delay or when the late motion will require an extension of the discovery period." *Medicines Co. v. Mylan Inc.*, No. 11 C 1285, 2013 WL 120245, at *2 (N.D. Ill. Jan. 9, 2013).

The Court concludes that ChemRite's motion is timely. Although the motion was filed only one month before the close of the fact discovery period, the Court finds that the principal cause of this discovery dispute–and the fact that it came to a head only in June 2021–was Sage's decision not to search for or produce text messages–despite ChemRite having requested them at the outset of discovery and its corresponding failure to clearly advise ChemRite of this decision until only six weeks remained in the fact discovery period. By responding in that manner to ChemRite's requests for production, moreover, Sage failed to comply with Civil Rule 34. As relevant here, Rule 34 provides that, "[f]or each item or category" in a request for

4

production, "the response must either state that the inspection and related activities will be permitted or state with specificity the grounds for objecting to the request, including the reasons." Fed. R. Civ. 34(b)(2)(B). Likewise, Rule 34(b)(2)(C) requires that any objection to a request to produce "must state whether any responsive materials are being withheld on the basis of the objection." Fed. R. Civ. P. 34(b)(2)(C). Sage does not contend that it lodged such an objection, nor does it dispute that it was only at the June 16, 2021 meet-and-confer that Sage first disclosed that it had not produced text messages because its parent company does not maintain a repository of employee text messages. Had Sage complied with Rule 34(b), and promptly informed ChemRite that it was not producing text messages because it had no mechanism for gathering and storing its employees' texts, ChemRite could have moved to resolve this issue much earlier–including by raising with Sage its duty to preserve relevant evidence, including text messages. *See, e.g.*, *Schmalz v. Vill. of Rosemont*, No. 13 C 8012, 2018 WL 1704109, at *5 (N.D. Ill. Mar. 23, 2018) (recommending that sanctions be imposed for failure to preserve text messages after duty to preserve arose); *In re Gold King Mine Release in San Juan Cnty., Co., on Aug. 5, 2015*, No. 1:18-md-02824-WJ, 2021 WL 3472440, at *5-6 (D.N.M. Aug. 6, 2021) (eight-month delay before government agency took steps to preserve key employees' ESI on their electronic devices, including text messages, was "unreasonable").

Sage's argument that ChemRite should have inferred–whether from the ESI hit reports that featured only emails or the absence of text messages in Sage's ten document productions–that Sage had not searched for or produced text messages has no merit. The Court agrees with ChemRite, *see* [74] 3, that this argument "turns the rules of discovery upside down": ChemRite's requests for production reasonably sought communications that had occurred via text, but Sage unilaterally and without notice to ChemRite–and without complying with Rule 34(b)–refused to search for or produce such communications. In these circumstances, it would be unreasonable to hold that the clock started ticking once Sage's document productions began, and that a motion to compel not filed soon enough after ChemRite sifted through the productions and determined that no text messages had been produced was untimely. Furthermore, the Court is mindful that document discovery in this high-stakes litigation has been extensive, with Sage alone producing 16,000 documents. [*Id.*] 5. Given the volume of material produced during discovery, and Sage's failure to clearly signal that it was not producing text messages on undue-burden grounds, the Court cannot agree that ChemRite's motion is untimely.

Finally, the Court observes that it was only in early June 2021, during the depositions of Simmering and Hayes, that ChemRite obtained more specific testimony about the extent to which Sage and Stryker executives had used text messages for work-related communications and the fact that Simmering texted with multiple Stryker executives about the FDA warning letters and how Sage should respond to them. [55-4] 2 (Simmering deposed on June 1, 2021); [55-9] 2 (Hayes

deposed on June 4, 2021). ChemRite's ensuing motion to compel was filed less than four weeks after the latter deposition and was timely.

### B. Relevance and Undue Burden

Sage argues that the motion to compel should be denied based on Rule 26(b)(2)(C)(iii), which provides that the Court must limit the extent of discovery if it determines that "the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C)(iii). In support, Sage maintains that discovery into text messages "would not yield probative benefits" and "would be highly burdensome." [63] 9, 11. The Court disagrees on both fronts.

First, ChemRite has carried its initial burden to establish the apparent relevance of the text messages. *See Mendez*, 2020 WL 4736399, at *3 ("The party requesting discovery bears the initial burden to establish its relevancy."). Simmering testified that he used text messages to communicate with other Stryker executives about the FDA warning letters and Sage's responses, [55-4] 7-8, and this testimony is consistent with several email chains–in which Sage and Stryker can be seen developing a response to the warning letter–that show Simmering directing the Stryker executives to consider certain text message he sent. These kinds of internal, contemporaneous communications between the Sage and Stryker decision-makers who were responsible for responding to the warning letters are plainly relevant. That Sage has produced "contemporaneous emails" from these same executives on "this precise issue" without objection only underscores this point. [63] 9.

Sage's arguments that any further production of text message is not likely to generate relevant evidence lack merit. *See Mendez*, 2020 WL 4736399, at *3 ("If the discovery appears relevant, the party objecting to the discovery request bears the burden of showing why that request is improper."). It is not clear to the Court how Sage–which has admittedly failed to search for, review, and produce its employees' text messages, and which did not raise a relevance objection in its initial responses to ChemRite's production request–can plausibly assert a relevance objection now. Without having gathered and reviewed the text messages, how could Sage know that the texts are irrelevant? Sage also contends that, given the extensive document discovery that has already occurred, it is unlikely that its employees' text messages "would add any substantive information" to the case. [63] 9. Again, however, any argument that the text messages may be cumulative to emails already produced is purely speculative, as Sage does not know what is in the unproduced text messages. Finally, Sage's argument that ChemRite could have questioned Simmering and the other deponents "about the content of any referenced text messages" misses the mark. As other decisions from the Northern District of Illinois have recognized, the "content of text messages cannot be replaced simply by eliciting testimony from [a party], and by having [another party] accept that testimony rather than relying on the actual messages to use as they deem fit." *Schmalz*, 2018 WL 1704109, at *4. In any event,

when ChemRite's counsel questioned Simmering about one text message, Simmering acknowledged that he was "struggling to recall this conversation from nearly four years ago[.]" [55-4] 7. This exchange not only demonstrates why ChemRite could reasonably have decided that questioning the deponents in more depth about their text messages from years ago would be futile, but also underscores the point in *Schmalz* that deposition testimony about a text message is not necessarily an adequate substitute for the text message itself.

Second, Sage has not substantiated its claim that permitting the proposed discovery would impose an "unwieldy burden" on Sage. Sage has not offered any evidence to establish that searching for, gathering, and producing the text messages at issue would be unduly burdensome. *See Jenkins v. White Castle Mgmt. Co.*, No. 12 C 7273, 2014 WL 3809763, at *2 (N.D. Ill. Aug. 4, 2014) ("Undue burden or expense, actual or potential, must be shown by a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements.") (internal quotation marks omitted). Instead, it relies on an attorney's declaration that states–without explanation or supporting documentation–that the process would be "extremely costly." [63] 4; [66] 3, ¶ 16. Apart from its conclusory nature, the declaration makes no effort to separate the costs and burdens that Sage would have incurred had it properly responded to ChemRite's discovery requests at the outset–Sage represents that it imposed a litigation hold to preserve other evidence relevant to its claims and presumably could have taken steps to ensure that its employees' text messages were preserved[2]–from any additional costs that Sage is likely to incur now that it must engage in this process four years after the fact. On this point, the Court notes that Sage did not raise a proportionality objection to ChemRite's request for text messages in its initial discovery responses. *See* [53-8].

Third, the fact that Sage is seeking in excess of $62 million in damages from ChemRite weighs heavily in favor of requiring Sage to respond to ChemRite's reasonable request for relevant information. *See DeLeon-Reyes v. Guevara*, Case Nos. 1:18-cv-01028 & 1:18-cv-02312, 2020 WL 1429521, at *5 (N.D. Ill. Mar. 18, 2020) ("substantial dollar amount" in case where plaintiffs sought "over $40 million in damages" "certainly calls for meaningful discovery efforts"); *United States ex rel. Robinson v. Indiana Univ. Health, Inc.*, 2016 WL 10570221, at *4 (S.D. Ind. Aug. 29,

---

[2] Sage represents that it "took 'reasonable steps to preserve' potentially relevant documents (including text messages) that existed in its possession, custody, or control by issuing a Legal Hold Notice to personnel with knowledge about the issues related to the litigation." [63] 11. Sage's brief provides no further information about the litigation hold or what steps it took to preserve text messages. It is unclear whether, or the extent to which, such text messages may still be accessible by Sage, given its representation that it "does not maintain a repository of its employees' text messages" [*id.*] 12, as well as Simmering's testimony that he was not sure "what's retained" of his text messages because he has had "a number of new phones since" 2017. [55-4] 6.

2016) ("the amount in controversy in this matter [is] tremendous and weigh[s] in favor of admission" of evidence of certain topics at Rule 30(b)(6) deposition).

For these reasons, the Court concludes that ChemRite's discovery request seeks relevant information, and Sage has not established that the request would impose an undue burden or is otherwise outside the scope of discovery permitted by Rule 26(b)(1).

### C. Scope of Relief

In the concluding section of its motion, ChemRite argues that the Court should order Sage to "take whatever efforts are necessary to recover and produce all relevant text messages from all previously-identified custodians in this dispute, and for any messages not recoverable, account for when and why those messages were destroyed." [52] 15. ChemRite's briefs do not make clear which or how many employees are on this list of "previously-identified custodians." As noted above, Sage offered during the meet-and-confer process to produce text messages from July and August 2017 that had been retained by its current employees. ChemRite rejected this offer.

The Court concludes that ChemRite is entitled to discover all text messages from (1) July and August 2017 that (2) relate to the FDA's warning letters and Sage's and Stryker's response to the warning letters, including the recall that was initiated in August 2017, (3) regardless of whether the text was sent by a now-current or now-former employee of Sage or Stryker. Sage must produce the text messages within 30 days of the date of this order. If ChemRite determines that Sage's production is deficient in some material respect, it must engage with Sage in the Rule 37.2 meet-and-confer process and fully exhaust all avenues of resolving the dispute with Sage before filing any further discovery motion with the Court.

### Conclusion

ChemRite's motion to compel text messages [56] is granted. Sage must produce the text messages at issue, as described in this Memorandum Opinion and Order, within 30 days of the date of this decision.

_____
**HEATHER K. McSHAIN**
**United States Magistrate Judge**

**DATE: November 12, 2021**